**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH MEYERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 11-182 Erie** |
| ) | |
| **PENN NORTH CENTERS FOR** ) | |
| **ADVANCED WOUND CARE, P.C.,** ) | |
| **SERENA GROUP, INC.,** *substituted for* ) | |
| *SERENA GROUP, LLC,* **and THOMAS** ) | |
| **SERENA,** ) | |
| ) | |
| **Defendants.** ) | |

## Opinion

Pending before the Court is Joseph Meyers' Motion for Attorneys' Fees and Expenses

pursuant to Fed. R. Civ. P. 54(d) and §260.9a(f) of the Wage Payment and Collection Law 43 Pa.

Stat. Ann. §260.1 *et seq* ("WPCL").  The WPCL states, "[t]he court in any action brought under

this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs

for reasonable attorneys' fees of any nature to be paid by the defendant." 43 Pa.C.S.A.

§260.9a(f).  We will grant Plaintiff's Motion; however, as explained herein, we reduce the total

amount of requested attorneys' fees.

### I.   Background

Plaintiff Joseph Meyers was hired on July 28 2006, as Vice President of Clinical

Operations in charge of conducting corporate development for Defendant Dr. Thomas Serena

and his companies, which included Penn North Centers for Advanced Wound Care, P.C.  Later

in his tenure he became the National Sales Manager for an ointment Defendants were attempting

to market.  Finally, in July 2009, Mr. Meyers' position was changed to nurse/manager for a

wound care center where he remained until he was terminated on September 11, 2009.  Mr.

Meyers filed this action seeking payment for unpaid wages for 2008, vacation pay for 2008 and 2009, and unpaid expenses for 2008 and 2009. Defendants admitted that Meyers was not paid wages for three pay periods in 2008, but explained that the company never had sufficient funds to pay the wages and thus the wages were never actually owed. Defendants further denied that Meyers was due any vacation pay. Finally, Defendants claimed they paid Meyers all expenses he was due, and in fact overpaid him, for which Defendants counterclaimed.

A bench trial in this matter was held on August 14 and August 15, 2013. Mr. Meyers was represented by Charles H. Saul, Esquire and Liberty J. Weyandt, Esquire of the law firm Margolis Edelstein. Defendants were represented by Christopher W. Callihane, Esquire, of Tucker Arensberg. Following trial the parties submitted proposed findings of fact and conclusions of law in which Plaintiffs requested a total judgment in their favor of $93,780.38, and Defendants requested judgment against Plaintiff on all of his claims and a judgment of $13,579.87 on their counterclaim.

On March 28, 2014, we entered judgment in favor of Plaintiff for a total net award of $11,660.51. As we explained in our Opinion, we concluded that Plaintiff was owed wages for three pay periods in 2008 amounting to $20,192.31, but that he was not due vacation pay or reimbursement for unpaid expenses. In addition, pursuant to Pennsylvania's Wage Payment and Collection Law we awarded Plaintiff $5,048.07 in liquidated damages, for a total award in his favor of $25,240.38. We further concluded that Plaintiff was overpaid for his expenses and therefore we entered judgment in favor of Defendants on their counterclaim, and set-off $13,579.87 -- the amount of expenses Plaintiff owed Defendants -- against his award for unpaid wages, resulting in the net award of $11.660.51.

Given that Plaintiff was successful, in part, on his WPCL claim, he filed a petition for attorneys' fees pursuant to section 260.9(f) of the WPCL, seeking reimbursement of attorneys' fees of $62,906.25 and expenses of $733.02. As previously noted herein, the WPCL states, "[t]he court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant." 43 Pa.C.S.A. §260.9a(f). Defendants have filed a Brief Opposing Plaintiff's requested fees and expenses, and instead argue that the appropriate amount of attorneys' fees Defendants owe is $12,586.00.

## II. Standard of Review

For purposes of attorneys' fees, a plaintiff is considered a prevailing party if the plaintiff succeeds on any significant issue which achieves some of the benefits sought in bringing suit. Farrar v. Hobby, 506 U.S. 103, 109 (1992). An award for attorneys' fees to a prevailing party is calculated using the lodestar approach under which "a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Interfaith Community Organization v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005). "The district court has the discretion to make certain adjustments to the lodestar." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). "Attorneys seeking compensation must document the hours for which payment is sought 'with sufficient specificity'." Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996), quoting Keenan v. City of Phila., 983 F.2d 459, 472 (3d Cir. 1992). To establish sufficient specificity, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" Id., quoting Kennan, 983 F.2d at 473. In assessing whether an attorney's time was "reasonably expended," the court must ask whether the attorney exercised "billing judgment."

> [c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

Hensley, 461 U.S. at 434 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980 (*en banc*)).

The fee applicant must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stetson, 465 U.S. 886, 896 n. 11 (1984). "The party opposing the fee award has the burden to challenge 'by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee.'" Rode, 892 F.2d at 1183. Determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. University of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation." Interfaith Community Organization, 426 F.3d at 705.

A three-step burden-shifting framework is followed to arrive at the appropriate hourly rate. First, the prevailing party must establish a prima facie case by producing sufficient evidence of a reasonable market rate for the essential character and complexity of the services rendered. See Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). Second, if a prima facie case has been established, the opposing party must produce record evidence to contest this rate. See Id. Finally, if the reasonable market rate is in dispute, the Court must decide the appropriate market rate based on the record.

### III. Legal Analysis

In his Motion for Attorneys' Fees and Expenses, Plaintiff requests reimbursement of $62.906.25 in total attorneys' fees and $733.02 in expenses. Defendants seek to reduce the requested attorneys' fees by approximately $50,000, and argue for an award of $12,586.00. We note that Defendants do not challenge Plaintiff's request for expenses.

#### *Plaintiff's Voluntary Reductions*

As explained in Plaintiff's Brief, the requested amount of attorneys' fees reflects two types of voluntary reductions made by counsel. First, each attorney's total number of hours has "been reduced for duplicative time with [co-counsel], work of a more clerical nature, time spent on a companion case involving another employee of Defendants, and time that might be deemed excessive in nature." P. Br. in Support of Motion for Attorneys' Fees 7. Taking these reductions into account results in a voluntary reduction of Mr. Saul's hours from 322.80 hours to 258 hours, and a voluntary reduction in Ms. Weyandt's hours from 504.40 hours to 254.50 hours. Adding in the work performed for the present motion amounts to an additional 10 hours for Mr. Saul and 5 hours for Ms. Weyandt. Thus, in total Plaintiff requests reimbursement of 268 hours at $300.00 per hour for Mr. Saul (or $80,400), and 259.50 hours at $175.00 per hour for Ms. Weyandt (or $45,412,50).

In addition, counsel suggests that the above requested amounts be reduced an additional 50% to account for Plaintiff's limited success at trial. Therefore, Plaintiff seeks reimbursement for half of $125,812.50 ($80,400 + $45,412.50), which is $62,906.25.

#### *Defendants' Objections*

Defendants object to the attorneys' fees sought for reimbursement on five grounds: (1) Plaintiff's block billing and vague descriptions of performed tasks merits a reduction in the lodestar; (2) the number of hours billed to complete tasks is unreasonable, excessive, and

duplicative; (3) the hourly rate of Mr. Saul requested to calculate the lodestar is not representative of an hourly rate for the Erie, Pennsylvania, market for a straightforward WPCL case; (4) Plaintiff's limited success at trial warrants a reduction of the loadstar greater than 50% proposed by counsel; and (5) Plaintiff's rejections of Defendants' numerous reasonable settlement offers should bar recovery of fees incurred after the date of such offers and/or reduce the lodestar. Def. Br. in Resp. 2.

Specifically, Defendants argue that we should further reduce the hours requested for reimbursement as follows: Mr. Saul's request for 268 hours should be reduced by 114 hours to 154 hours, and Ms. Weyandt's request for 259.50 hours should be reduced by 120 hours to 139.50 hours. Plaintiff also argues that Mr. Saul's' hourly rate should be reduced from $300 to $250. Accordingly, Defendants argue that the total attorneys' fees to be used as the lodestar should be $62,192.50, rather than the $125,812.50 requested by Plaintiff's counsel. Finally, Defendants argue that the appropriate percentage reduction to the lodestar amount should be 80%, instead of the 50% proposed by Plaintiff's counsel. Therefore, Defendants' propose that the amount of attorneys' fees owed to Plaintiff's counsel should be 80% of $62,192.50, or $12,586.00.

### A. Lodestar Percentage Reduction based on Limited Success and Rejection of Settlement Offers

Defendants present a two-stage argument for reducing the lodestar by 80%. First, Defendants argue that the lodestar should be reduced by 67% because of Plaintiff's limited success. Def. Br. in Resp. 19. Plaintiff received judgment only on his unpaid wages claim, but lost on his claim for vacation pay and business expenses. Id. Defendants note that Plaintiff was only awarded 10% of the total damages he sought to recover. Id. at 18. Defendants support their argument for a reduction greater than 50% by citing to case law by the United States Court of

Appeals for the Third Circuit stating that "'counsel fees should only be awarded to the extent that the litigant was successful.'" Id. at 19, quoting Washington, 89 F.3d at 1042 and citing Watson v. SEPTA, 207 F.3d 207 224-225 (3d Cir. 2000) (award of attorney's fees properly adjusted in light of limited success).

Next, Defendants argue the Lodestar should be further reduced, to a total reduction of 80%, due to Plaintiff's rejection of reasonable settlement offers. According to Defendants, Plaintiff rejected a settlement offer of $18,000, and a second settlement offer made a month before trial of $50,000, both of which were higher than the ultimate award Plaintiff received. Def. Br. in Resp. 20. In support, Defendants cite to a Third Circuit Court case in which the Court affirmed a reduction of the lodestar because of the plaintiff's rejection of settlement offers that were greater than ultimately awarded at trial. Id. at 21, citing Lohman v. Duryea Borough, 574 F.3d 163, 166 (3d Cir. 2009). The Lohman court determined that the reduction was warranted because it "is comparable to the award Plaintiff's counsel would have received had the Plaintiff settled for the maximum settlement offer, and substantially greater than one she would have received under a normal contingent fee of the verdict." Id.

As already stated, Plaintiff concedes that the lodestar should be reduced by 50%, as he was not successful on all of the claims brought against Defendants. P. Br. 7. However, Plaintiff does not agree that a 67% reduction is appropriate in this case because not only did he successfully defeat several of Defendants' defenses and objections, but also the unpaid vacation and expense reimbursement claims involved interrelated issues with the WPCL claim that was ultimately successful. Id. at 7, 8. A reduction of the lodestar by two-thirds, Plaintiff argues, would not account for the interrelated nature of the factual and legal issues or the time necessary to address the numerous defenses raised by Defendant in opposition to Plaintiff's claim for back

pay.  Id. at 8.  Thus, because it is impossible to delineate all the time spent on each claim,

Plaintiff submits that a reasonable reduction to the lodestar is the 50%, which as noted has

already been factored in to the request for attorneys' fees.  Id.  We note that Plaintiff did not file

a reply regarding Defendants' argument for a further reduction based on the rejection of

settlement offers.

We agree with Defendants that a reduction of more than 50% is appropriate in this case.

Plaintiff originally requested damages of $93,780.83, but received Judgment in his favor for

$20,192.31 on his claim that he should be paid for the wages he earned, but that were withheld

by Defendants.  This was a straightforward claim, as we stated in our Opinion: Plaintiff worked;

he is entitled to be compensated for his work.  In contrast, Plaintiff lost on his claims for unpaid

vacation time and unreimbursed expenses, and also lost defending against Defendants'

counterclaim that Plaintiff actually *owed* Defendants for overpaid expenses.  This is a classic

case of limited success.

As for the settlement offers, we cannot fault Plaintiff for rejecting an offer of $18,000.  Such

an offer appears to have been a reasonable offer, although less than the amount of wages actually

due Plaintiff, in light of the fact that if accepted Plaintiff would not have incurred additional trial

costs.  Given the obvious strength of Plaintiff's claim for unpaid wages and the likelihood that he

would also receive liquidated damages, plus earn the right to petition for attorneys' fees, the

rejection of $18,000 was good judgment.  The rejection of the $50,000 claim, may also have

been motivated by the strength of Plaintiff's unpaid wages claim, however, we cannot ignore that

the offer was twice as much as awarded by the Court, and nearly 10 times as much as the

ultimate, offset, award.

We also note that Defendants vigorously defended against Plaintiff's claim for unpaid wages which required counsel for Plaintiff to expend more attorney hours on the one successful claim than perhaps they would have otherwise spent had Defendants conceded that they owed Plaintiff the wages he actually worked for. Thus we decline to reduce the lodestar as far as requested by Defendants. In addition, while we see some overlap and interrelatedness between the claims, we do not believe it to be as significant as Plaintiff asserts. As stated, the successful claim was fairly straightforward, and only related in a limited way to the claims for expenses and vacation pay. However, it is clear that the litigation here necessarily overlapped and it is difficult to precisely carve out attorney work on each claim. In our judgment, to account for the limited success at trial as well as the rejection of the second settlement offer we find that a reasonable reduction in the lodestar is 55%.

**B. Reduction in Lodestar due to Block billing**

Defendants argue that many of the hourly billing records submitted by Plaintiff are "in the form of 'block billing,' where several diverse tasks are combined in one long time entry without any breakdown of the actual time expended on each discreet task." Def. Br. in Resp. 5. Defendants argue that Plaintiff's failure "to more specifically identify the particular time expended on a particular task" makes our task of determining if the billed hours are reasonable or excessive difficult. Id. Defendants note that other courts have determined that "the usage of block billing is fundamentally inconsistent with the lodestar method" and that "the proper remedy for such vague block billing is an across-the-board reduction in the attorneys' hours." Id. at 6. Defendants also assert that Plaintiff was aware that the WPCL claim allowed for the submission of a Motion for Attorneys' Fees if the claim was successful and yet counsel still

failed to specifically identify discrete tasks. Id. Therefore, Defendants request "a global reduction to the lodestar for block billing." Id.

In Washington, the Third Circuit Court of Appeals found that the District Court erred in holding that the billing records submitted in support of a motion for attorneys' fees were "vague and identified only by non-descriptive statements such as 'research', 'review', 'letter to', and 'conference with'." 89 F.3d at 1037. The records in Washington were computer kept and included "the date when the work was performed, the attorney performing the work, the nature of the work (e.g., 'Prepare complaint,' 'Conference with Alan Epstein regarding liability issues')." Id. Thus, the Washington Court concluded that the submitted records "provided enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable." Id. at 1038 (quoting Rode, 892 F.2d at 1191).

In accord with Washington, we find that Plaintiff's submitted records are specific enough to allow us to determine if the hours requested are reasonable for the work performed. Plaintiff's records include 28 pages of computer generated itemized entries indicating the date, attorney, hours, amount billed for each task, and a description of the task performed. Exhibits 3 & 4, attached to P. Br. The descriptions of tasks use words such as "receipt & review," "conference with," "prepared," and "research." Id. The entries also include details of the task such as who sent or received a specific piece of correspondence, which document was being worked on, who was present at a conference and its topic, and the nature of research performed. Id. Therefore, we deny Defendants' request for a global reduction of the lodestar because of "block billing."

**C. Reduction in billable hours for excessive, unreasonable, and duplicative hours**

Next, we address Defendants' objections challenging the hours performed for certain tasks.

**1. Excessive time spent drafting complaint**

Defendants argue that Plaintiff's request for reimbursement of 21.5 hours of attorney time related to researching and drafting the Complaint and is excessive and unreasonable. Def. Br. in Resp. 7-8. Defendants note that this case was essentially a simple WPCL claim requiring only a 5-page Complaint. Id. 7. Defendants argue that this is an unreasonable amount of time for any attorney, and Ms. Weyandt and Mr. Saul both attested to the fact they are experienced employment and labor law attorneys. Id. 8. Therefore, Defendants request a reduction of 17.5 hours from Attorney Weyandt's requested hours for drafting the complaint. Id.

Plaintiff stated in his Brief that the contemporaneously kept records of hours have been edited to remove duplicative time spent with co-counsel, "work of a more clerical nature, time spent on companion case involving another employee of Defendant, and time that might be deemed excessive in nature." P. Br. 7. Thus, Plaintiff's fee request has already been reduced by 249.50 hours for Ms. Weyandt and 64.5 hours for Mr. Saul. Id.

The Plaintiff's records reflect that some of these deducted hours related to the preparing of the Complaint. Further, the WPCL claim in this case was predicated on three different alleged wrongdoings: unpaid wages, unpaid vacation time, and unpaid expenses. Each of these, to some degree, arises out of different facts taking place over a period of more than a year and involved multiple locations. Thus, although the Complaint may be simple, the investigation of the facts, which accompanies the drafting of the Complaint, is not necessarily simple. As Plaintiff's billing records reflect, the hours associated with preparing the Complaint are coupled with tasks

involving the review of documents and other pre-filing tasks. Therefore, we find that Plaintiff's time spent drafting and researching the Complaint is reasonable and not excessive.

## 2. Time Spent in Response to Defendants' Motion to Dismiss

Defendants argue that the 7.9 hours of attorney time expended reviewing the Motion to Dismiss, determining that the Plaintiff would not respond to the Motion to Dismiss, drafting an Amended Complaint and a Motion for an Extension of Time to file the Amended Complaint, should not be reimbursed because it is time associated with an unsuccessful claim. Def. Br. in Resp. 8-9. Defendants assert that the only change to the Amended Complaint was the removal of the Pennsylvania Minimum Wage Act claim. Id. at 8.

Plaintiff's Amended Complaint does replace the Pennsylvania Minimum Wage Act claim, but it also adds Count II under Breach of Contract and Count III under Promissory Estoppel. These additional two claims allege facts which are common to the WPCL claim, which the Plaintiff succeeded on at trial. For example, both the promissory estoppel and the breach of contract claim allege that Plaintiff was orally told that he would be paid wages in exchange for his work. A "court can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were "distinct in all respects from" claims on which the party did succeed.'" Washington, 89 F.3d at 1044, quoting Rode, 892 F.2d at 1183(quoting Hensley, 461 U.S. at 440, 103 S.Ct. at 1943).

We find that because these unsuccessful claims were not "distinct in all respects from" the claim on which Plaintiff did succeed, not all of the hours spent amending the Complaint should be deducted. However, time was expended on the drafting of the original Complaint, which included a legally insufficient claim, and therefore required time to be expended on making corrections in drafting the Amended Complaint. Thus, we find that it is appropriate to

reduce Ms. Weyandt's time reviewing the Motion to Dismiss and drafting the Amended Complaint by 4 hours.

### 3.  Review of Emails and Court Orders

Defendants assert that Plaintiff's billing records submitted for reimbursement include 13.7 hours for "Receipt and Review" of emails, text orders, and other correspondences.  Def. Br. in Resp. 9.  Defendants contend that 12 minutes were billed for reading and responding to each short email, and that this is excessive and unreasonable.  Id.  Examples of these short emails have been provided by Defendants, which show sent and received emails.  Id. at 10.  Defendants request that 10 hours be deducted from Ms. Weyandt's time spent receiving and reviewing emails. Id.

Based on our review of the emails provided by Defendants, we find that billing 12 minutes per email to read and send messages comprised of no more than several sentences is excessive.  Other courts have also found that billing 12 minutes for the reading of emails 2 to 5 sentences in length is excessive. Morris v. I.C. Sys., Inc., No. 06-2133, 2009 WL 1362594, *5 (E.D. Pa. May 15, 2009).  Notably, the Morris Court found that a reduction in hours was warranted even though they only reviewed a selection of the emails, as we have done in this case.  Id.  Therefore, we find that it is appropriate to reduce Plaintiff's request for reimbursement for receipt and reviewing of emails, text orders, and other correspondences by 5 hours of Ms. Weyandt's time.

### 4.  Reductions Related to Depositions

Next Defendants argue that Plaintiff should not be entitled to all of his requested fees related to the scheduling, preparing, and summarizing of depositions.

### a.  Scheduling Depositions

Defendants argue that the 12.2 hours of Plaintiff's requested hours relate to scheduling depositions —an amount almost equal to the time to conduct all five of the depositions— is excessive. Def. Br. in Resp. 10. Defendants assert that the emails sent and received regarding the scheduling of depositions were billed in a similarly unreasonable manner as other emails. Id. Defendants provide examples of emails sent and received by Plaintiff regarding depositions, which were billed at 12 minutes, but only consisted of 10 words in one email and 5 in another. Id. 11. Thus, Defendants request an additional 10 hours be deducted from Plaintiff's reimbursed hours. Id.

We find the amount of time billed for email correspondences regarding the scheduling of depositions to be unreasonable for the same reasons as the emails regarding other matters above. However, the record indicates that many of the hours billed were for telephone conferences regarding the scheduling of depositions. Defendants have not provided any reason why the amount of time billed for telephone conferences regarding depositions is excessive or unreasonable. Therefore, we find that an appropriate reduction in Ms. Weyandt's time spent receiving and reviewing emails regarding the scheduling of depositions is 3 hours.

### b. Preparing for Depositions

Next, Defendants calculate that 80.1 hours of Plaintiff's total requested time for reimbursement are related to preparation for depositions. Id. Defendants argue that because the claims in the case were relativity straightforward and the depositions were "quite limited," 80.1 hours is excessive and unreasonable. Id. At 8 hours a day for a working week the total hours expended on preparation would only total 40 hours. Id. Accordingly, Defendants request that 40.1 hours be deducted from the requested hours. Id.

In reviewing Plaintiff's recorded hours, many entries indicate that document review is being performed for deposition preparation. The nature of this case involved the discovery of a large number of correspondences and financial records over a span of more than a year. Given that the details of these records were at issue in this case, it would be reasonable to expend time reviewing the large quantity of documents in detail before conducting depositions. Therefore, we find that the hours requested by Plaintiff relating to the preparation of depositions are not excessive or unreasonable.

### c. Summarizing Deposition Transcripts

Defendants note that 43.1 hours requested by Plaintiff are related to summarizing deposition transcripts by both Mr. Saul and Ms. Weyandt. Id. at 12. Defendants contend that this is duplicative work and that it should not take more time to summarize deposition transcripts than it took to conduct the deposition itself. Id. Further, any time that Ms. Weyandt spent preparing summaries should have reduced the time Mr. Saul needed to spend reviewing them. Id. Defendants argue that the 14.1 hours expended by Ms. Weyandt and 29 hours expended by Mr. Saul are unreasonable. Id. Therefore, Defendants assert that all of Mr. Saul's hours and half of Ms. Weyandt's hours should be removed. Id.

The five depositions took roughly 12.25 hours to conduct; therefore we find it reasonable that Ms. Weyandt expended 14.1 hours summarizing the almost 500 pages of depositions. Other district courts have reduced requested hours for summarizing deposition, which took approximately 5 hours to conduct, down to 10 hours from the requested 20 hours. Diaz v. Saucon Valley Manor, Inc., No. 12-0433, 2013 WL 6409450, at *3 (E.D. Pa. Dec. 9, 2013). In Diaz counsel also requested reimbursement for hours expended by paralegals summarizing the

depositions, which were not reduced by the court. Id. Thus, expending more time summarizing depositions than it took to conduct is not necessarily indicative of an excessive amount of time.

Plaintiff's records indicate that Mr. Saul was not only summarizing the depositions but was also reviewing and analyzing them. Therefore, we find that this was not merely duplicative work which had already been performed by Ms. Weyandt. Thus, we deny Defendants' request to remove or reduce the requested hours related to summarizing depositions.

### 5. Conferencing with Co-Counsel

Next, Defendants challenge Plaintiff's records indicating that 33.6 hours requested for attorneys' fees were expended by Ms. Weyandt for time she emailed or conferenced with Mr. Saul. Def. Br. in Resp. 12. Defendants argue that the majority of this time was related to "rudimentary case details" and not "substantive case strategy." Id. Thus, Defendants argues that 33.6 hours is an unreasonable amount of time. Id. Defendants also argue that based on Ms. Weyandt's billing .20 hours for one sentence emails, that it can be concluded that she continued this practice when billing for time related to emailing Mr. Saul. Id. at 12-13. Therefore, Defendants request a 50% reduction in the 33.6 hours of Ms. Weyandt's hours related to conferencing and emailing with Mr. Saul. Id. at 13.

We have reviewed the billing records and note that there are entries with descriptions that describe sending multiple emails and are billed for an amount which equates to 12 minutes per email. However, many entries consist of emails sent to Mr. Saul that also include the performance of other tasks, such as conferencing. As discussed above, Defendants have not provided any evidence that Plaintiff's time requested for conferencing is unreasonable. Further, attorney conferences addressing substantive matters regarding the cases would require more time to conduct than conferences regarding the scheduling of depositions. Therefore, we find that

Plaintiff's request for reimbursement for time spent emailing and conferencing with Mr. Saul is reasonable.

### 6. Preparing Exhibits

Next, Defendants argue that the hours requested for reimbursement for preparing Exhibits and binders are administrative tasks that are more appropriate for a paralegal; therefore this time should be billed at a common hourly rate for paralegals of $100. Id. at p. 16. We agree that such tasks are administrative and we will reduce the billed hourly rate of Ms. Weyandt to $100 for 12 hours of her time.

### 7. Trial Preparation

Defendants indicate that counsel requests 105.7 hours in reimbursement for Mr. Saul preparing for trial and 7.5 hours for Ms. Weyandt for the same. Id. at 13. Defendants note that it appears that Mr. Saul did not become substantially involved in the case until after it was set to go to trial. Id. At that point, Defendants assert that the billing records show that he began expending significant time, in Defendants' words, "getting up to speed." Id. at 14. Further, Defendants argue that 113.2 hours preparing for a simple WPCL trial is excessive and should be reduced by a minimum of 50%. Id. at 15. Finally, Defendants argue that because of the lack of complexity in the case, Mr. Saul's work could have been performed by Ms. Weyandt; therefore, any hours awarded for trial preparation should be billed at her rate of $175. Id.

Defendants compare this case to Blagrave v. Nutrition Management Services, Co., No. 05-6790, 2009 WL 440299 (E.D. Pa. Feb. 20, 2009). Def. Br. in Resp. 13-14. Defendants explain that the Blagrave Court noted that a WPCL case is a simple contractual case and therefore fees should not be awarded for an attorney getting "up to speed" on the case. Id. at 14 (quoting Blagrave 2009 WL 440299, at *4).

We agree that Defendants should not have to reimburse counsel for time expended by an attorney for the duplicative task of "getting up to speed" on the case; however, there is no indication that Mr. Saul's time was in fact duplicative or "getting up to speed."  Counsel for Plaintiff divided the labor between two attorneys who billed at different rates with the higher hourly attorney not expending significant time until later in the case.  On the other hand this trial was a simple two day WPCL bench trial; therefore we find that the a reasonable number of hours for reimbursement for Mr. Saul's trial preparation is 80.7 hours, which amounts to a reduction of 25 hours.  We disagree with Defendants assertion that Mr. Saul's work could have been performed by Ms. Weyandt, and thus it should be billed at a lower rate.  Trial preparation work performed by a more experienced lawyer can lead to greater success at trial.

### 8. Reviewing and Summarizing the Trial Transcript and Drafting Findings of Fact

Defendants further request a reduction in counsel's requested for 20.5 hours of reimbursement associated with reviewing and summarizing trial transcripts, which is in addition to 40.5 hours for drafting the findings of fact.  Id. at 16.   Defendants request that these 20.5 hours be reduced to 8 hours.  Id.  We disagree and find that the hours requested for reviewing and summarizing trial transcripts is reasonable.

### D.  Attorney Saul's Hourly Rate

Defendants next argue that the hourly rate of $300 charged by Attorney Saul should be reduced to $250 to account for the litigation taking place in the Erie, Pennsylvania market. In addition, Defendants argue that a $50 reduction in Mr. Saul's rate is appropriate because this case involved a straightforward WPCL claim, and there were no novel or complex issues of law.

Plaintiff's counsel support their requested hourly rates of $300 and $175 with their own affidavits, as well as supporting affidavits from James Carroll, Jr. Esquire, Charles Lamberton, Esquire , and Robert A. Creo, Esquire. See Ex. 1 attached to Plaintiff's Brief at ECF No. 55 and Supplement to Ex. 1 at ECF No. 56 (stating the rates set forth by counsel are the reasonable market rate in Pittsburgh and the Western District of Pennsylvania for attorneys with similar skills, experience, and reputation).

Defendants contend that Plaintiff's supporting affidavits are evidence that $300 is an appropriate hourly rate for *civil rights or employment discrimination* work in *Pittsburgh* and the Western Pennsylvania market, but this case occurred in Erie and did not require a complex civil rights attorney. P. Br. 16-17. In support of the requested reduction, Defendants cite my recent Opinion in Buffington v. PEC Management II, LLP, 2014 WL 670854 (W.D. Pa. Feb. 20, 2014), in which I recognized that the Erie and Pittsburgh legal markets are distinct with different hourly rates. In Buffington I concluded that Plaintiff did not meet her burden of establishing the hourly rate in the Erie market as her supporting affidavits, like the affidavits in this case, were evidence of the proper hourly rate in the Pittsburgh area. Id. at *6. Therefore, I reduced the Buffington's attorney's billed hourly rate of $400 to $300 to reflect the difference between the Erie and Pittsburgh market. Id

Defendants support their argument for a reduction in Mr. Sauls's rate from $300 to $250 with an affidavit from Arthur Martinucci, Esquire, who is familiar with rates in the Erie market. Id. at p. 17-18, citing Ex. O to Defs. Br. Defendants also cite to Blagrave, in which the Court reduced the hourly rate charged by partner level attorneys in light of the simplicity of a WPCL claim. Id. at 18, citing Blagrave, 2009 WL 440299, *4.

In <u>Buffington</u>, we cited <u>Kurschinske v. Meadville Forging Co.</u>, 2008 WL 4462294 (W.D.Pa. Sept. 30, 2008), in which the prevailing plaintiff in a Title VII lawsuit sought reimbursement for attorneys' fees at a rate of $350.00 per hour. <u>Buffington</u>, 2014 WL 670854, *6. Though the rate was uncontested, Judge Sean J. McLaughlin reduced the rate to $275 per hour finding that "based on the Court's familiarity with litigation rates in the Western District of Pennsylvania, that $275.00 per hour is a reasonable hourly rate based upon the nature of the litigation and plaintiff's counsel's background and experience." <u>Kurschinske</u>, 2008 WL 4462294, *4.

As we stated in Buffington "the appropriate hourly rate prevailing in the forum in which the litigation is conducted is the appropriate rate to be used in the lodestar calculation for the determination of attorneys' fees." <u>Buffington</u>, 2014 WL 670854, *5. We conclude that Mr. Saul's rate of $300 is not sufficiently supported by his affidavits as a reasonable market rate for the essential character and complexity of the services rendered in the Erie Pennsylvania market. Although the WPCL claim is not complex and did not involve novel issues of law, Mr. Saul is an experienced and skilled litigator, and therefore we find that a reasonable rate for this case in the Erie area for an attorney of Mr. Saul's background and experience is $275.

## IV.    Conclusion

As set forth above, we will grant Plaintiff's motion for attorneys' fees and expenses, with the following adjustments. Ms. Weyandt's requested billable hours of 259.5 hours at $175, are reduced by 24 hours. Thus, Ms. Weyandt's lodestar is 235.5 hours at $175, for a total of $41,212.50. Twelve of the hours reduced from Ms. Weyandt's ledger are added back in at a rate of $100, for an additional $1200, making her total lodestar $42,412.50.

Mr. Saul's rate is reduced from $300 to $275. Mr. Saul's requested billable hours of 268 hours at $300, is reduced by 25 hours. Thus, Mr. Saul's lodestar is 243 hours at $275, for a total of $66,825. Based on these adjustments the total lodestar for attorneys' fees is $109,237.50, rather than the requested amount of $125,812.50.

Applying a 55% reduction to the lodestar of $109,237.50, results in a total award of attorneys' fees of $49,156.88. As noted, Defendants do not challenge Plaintiff's request for expenses in the amount of $733.02, which we find to be reasonable.

An appropriate order will be entered ordering Defendants to pay attorneys' fees of $49,156.88 and expenses of $733.02, for a total award of $49,889.90.

Date: July 16, 2014

Maurice B. Cohill, Jr.
Senior United States District Court Judge